Counsel, I'm Judge Dennis, and together with Judge King, and Judge Hull, we are your panel today in Michael Wearry v. Paulette Foster, etc. Mr. Grumian, you're first up, and you may begin. Thank you, Your Honors. May it please the Court, my name is Drew Grumian, and I represent Paulette Foster, Kearney Foster, William Foster, and Annette Alford in this matter. As a brief housekeeping matter, and for clarification purposes, Your Honors, Mr. Foster passed away due to COVID in October of last year, and plaintiffs moved to substitute his heirs as defendants in these proceedings. So for clarification, that is why I represent his heirs here, but I will be referring to defendant in this case. Your Honors, this appeal arises out of the denial of a motion to dismiss filed by Mr. Foster and by District Attorney Paroleau, asserting absolute immunity in response to the lawsuit filed by Mr. Wearry. Respectfully, the District Court erred in denying Foster and Paroleau's motion to dismiss, and its ruling is in direct conflict with controlling precedent from this Court. Because the motion was premised on, Mr. Foster's motion was premised on Rule 12c, the Court is bound to consider the facts as pled in plaintiff's complaint. So I think it's important to start with those facts. Eric Walbur was murdered in 1998. In 2000, Mr. Weary was implicated in the murder by an incarcerated man named Sam Scott. In April of 2000, Mr. Weary was arrested and indicted for the murder of Eric Walbur. 18 months later, 18 months after that indictment, it is alleged in the complaint in December of 2001 that Paroleau and Foster, quote, were concerned that Sam Scott's account would not be sufficient to secure a conviction and death sentence for Weary. Quote, Paroleau and Foster made an intentional and deliberate decision to fabricate a narrative that would corroborate Scott in order to procure Weary's conviction and death sentence. The complaint alleges that Foster and Paroleau met with an alleged witness, Jeffrey Ashton, and provided him with a completely fabricated story to adopt and repeat as testimony at the murder trial. In fact, Mr. Ashton did testify at the murder trial, and Mr. Weary was convicted and sentenced to death. That conviction was later overturned by the United States Supreme Court for unrelated reasons, and it was alleged in the complaint that it was upon preparation for retrial that Mr. Weary discovered this alleged scheme to fabricate evidence with Jeffrey Ashton and have him testify falsely. That was in 2017. Therefore, in 2018, these proceedings were started when Weary filed a complaint against Foster and Paroleau alleging claims under Section 1983 for violation of his 14th Amendment rights related to the fabrication of that evidence. The analysis here must begin with a discussion of absolute immunity. The Supreme Court has established that absolute immunity is available for prosecutorial functions. They have established the functional approach, quote, functional approach, for absolute immunity. They specifically said that it doesn't matter the official's title who's seeking it. It matters what function they were performing. And with respect to prosecutions, they say that absolute immunity extends to those acts which are, quote, intimately associated with the judicial phase of the criminal process. They gave some examples. This was in Imler when the immunity was established. They gave some examples of what that is. Those would include a state's evaluation of the case, evaluation of evidence, which witnesses to call, and most importantly for this case, quote, an out-of-court effort to control the presentation of witness testimony. Remember that the immunity is absolute. The court has made clear on multiple occasions, as has this court, that because the immunity is absolute, it protects all actions, no matter if they're malicious, wanton, intentional, or otherwise. So, Your Honors, let's turn to the facts of this case and the application of that immunity. The court has said, both this court and the Supreme Court, that there is a delineation that we look at to decide whether an official is entitled to absolute immunity or qualified immunity. And they look at whether or not it was investigative in nature, subject to qualified immunity, or advocatory in nature, or prosecutory in nature, subject to absolute immunity. And the court put great emphasis on the timing of the action. Was it before or after a finding of probable cause, and particularly an indictment of the individual? Here, it's important to remember that the alleged actions took place 18 months after the indictment, a mere two or three months before trial. This was clearly after Mr. Weary had been implicated, arrested, indicted, and charged with the murder. This was not investigation to try to determine a suspect or to try to establish probable cause to arrest Mr. Weary. In looking at, or in the analysis of whether something is investigatory or is advocatory, the court gave examples. For example, and this is in Cousin v. Small, which I'll discuss in more detail later, but this court said that investigative functions are things like searching for clues and corroboration that might give probable cause to recommend a suspect be arrested. That's not what we have here. The suspect had been arrested, had been indicted, had been charged. In comparison, or in contrast, an advocate's role is evaluating evidence and interviewing witnesses as he prepares for trial. The actions here occurred two or three months prior to the trial of Mr. Weary. Under no circumstances, under no reasonable reading of the complaint, could it possibly be concluded that the actions as alleged in the complaint were for the purpose of investigating this crime and establishing probable cause? In fact, because we have to look at the complaint, we can look at paragraphs 19 and 20. Plaintiffs specifically alleged the motive here. The motive was that they were concerned that they, and they being Paraloo and Foster, were concerned that they didn't have enough evidence to secure a conviction. So they fabricated this story. There's no motive, investigative motive, pled. The motive was prosecutorial. There can be no question that they were acting in roles as advocate for the state. So Your Honor, let's talk about Cousin v. Small, because that is the most important case, or the most analogous case we can look at. If you read that case, it is astonishing how close the allegations are, in our case, to the facts of Cousin. And when you look at Cousin, this court made it very clear that the alleged fabrication of witness testimony immediately prior to trial is an advocatory function that is subject to absolute immunity. The facts are nearly identical, and the court granted absolute immunity in that case. The court said specifically that the fabrication, the alleged fabrication, was intended to secure evidence that would be used at the presentation of the state's case, not to identify a suspect or establish probable cause. It went on to say that the question of absolute immunity in that case turned on whether the subject had been identified and arrested, or whether the interviews were occurring for trial. The same is true here. The question turns on whether our clients, Foster and Perilou, were alleged to have been doing this to investigate the crime, which clearly was not the case, clearly not alleged in the complaint, or were they preparing for trial, two or three months before trial, interviewing a witness and allegedly fabricating the testimony. Your Honor, our brief also pointed to Beckett v. Ford. That's a Sixth Circuit case. Again, it is almost scary how close the facts are in that case to both Cousin and our case. Identical set of circumstances where there's an allegation of coerced testimony and then a recanting of that testimony after the trial. And in that case, too, the Fifth Circuit said specifically that that type of conduct is protected by absolute immunity. So the elephant in the room for my client is Mr. Foster is a detective. He's not a prosecutor. We understand that. But as we briefed and as the Supreme Court has made clear and as this Court has made clear, the question is one of function, not title. The Court has made extremely clear, this Court on several occasions, that immunity attaches to the function, not the office. This Court has said that immunity attaches irrespective of title to those who perform functions essentially similar to judges and prosecutors. Clearly, this is not limited to prosecutors. The courts would be very clear if they wanted that to be the case. They would say it applies to functions of prosecutors or it is important to look at the function and the title. But that's not what the courts say. They say irrespective of title, we look to the function. So let's look at the function in this case. Every material allegation in the complaint is conjunctive of Parolew and Foster, that they acted together at every single material step. There is no separation between their actions. If Parolew, as a prosecutor, is entitled to the immunity, which we submit he is, there is no question that Foster is also entitled because irrespective of his title, just because he carries a badge and a gun does not strip him of that immunity. And Your Honor, it wouldn't be the first time that- Please interrupt, but you have an appointment soon. I'm sorry? I heard some audio, Your Honors. I'm sorry. It would not be the first time that this court has extended that immunity to other officers. I'll discuss those cases on rebuttal, Your Honors. I see my time is up and I look forward to addressing any other issues in rebuttal. Thank you. Thank you, sir. Mr. Al Giroux, you have five minutes. Good afternoon, Your Honors. Al Giroux on behalf of Mr. Parolew, the District Attorney of the 21st State of Louisiana. With all due respect, Your Honors, I'll be very brief. First and foremost, I just hope Your Honors are clear that District Attorney Parolew vehemently denies all of the allegations that have been set forth by Mr. Weary, but understands that for purposes of this motion, Your Honors need to take the allegations as true to determine the issue at hand. As far as the issue at hand is concerned, our arguments are basically the same arguments that Mr. Grameon has set forth. And Your Honor, therefore, unless you guys have any specific questions for me dealing with my client, I'd like to defer and reserve the rest of my allotted time for Mr. Grameon's reviews on rebuttal. Thank you, sir. Mr. Foley. When a police officer, I apologize, I hadn't realized I was still on mute. May it please the court, Eric Foley for Plaintiff Apelli, Michael Weary. When a police officer uses investigative tools like interrogations and lineups to violate constitutional rights, that officer may claim the defense available to all government officials, qualified immunity. And if a prosecutor uses those same police investigative tactics and techniques to violate constitutional rights, he has the same claim to qualified immunity. The fact that District Attorney Parolew holds the office of prosecutor does not mean that he has absolute immunity when he detains someone for questioning or shows them a photo lineup, nor can Detective Foster cloak himself in absolute immunity merely by acting in concert with the prosecutor to conduct that investigation. Here, the conduct alleged is false squarely within an investigative function. On the face of the complaint, it's alleged that District Attorney Foster, I'm sorry, District Attorney Parolew and Detective Foster needed evidence to corroborate existing statements from a witness that in search of that evidence, they pulled Jeffrey Ashton, then a child, from his classroom and brought him to a meeting at which there was an interrogation over six separate meetings, actually, that Jeffrey Ashton did not feel he was had the opportunity to leave those meetings and that during those meetings, a photo lineup was presented to Jeffrey Ashton in which he did not identify Michael Weary, but was told that he had. And that separately, Detective Foster brought Jeffrey Ashton to view the instrumentality of the crime at that time, a bloodstained automobile. So these are acts that are squarely investigative as opposed to the prosecutorial function. And the defendants have not met their burden under the law to show that these are functions that are deserving of absolute immunity under the common law. And that's a two-step test. The first being the determination of whether the function had been protected. And the second being whether the protection of that function with absolute immunity comports with the policy underlying 1983. And in all aspects, the arguments here fail at step one for the defendants. There is no authority that fabrication of evidence pre-trial was itself ever protected at common law. And in fact, decades now of Supreme Court precedent and precedent from this court established that that conduct is not protected by absolute immunity. And furthermore, that such conduct is in fact investigative and falls within the realm of investigative techniques and tools and tactics that if a prosecutor engages in are not part of his traditional functions as a prosecutor. I'm pointing specifically to language in Buckley, which we believe is the most salient case on this evidence assembled by police and appropriate preparation for its presentation at trial. And one can contrast that with the definition of investigative duties within that same opinion, which referenced the gathering of clues and corroboration of existing evidence. And Justice Kennedy in his dissent also notes that the type of continuing investigative work that might occur even after the filing of a bill of information or determination of probable cause includes the finding of quote new leads. And even in that work that a prosecutor might engage in, that would be not protected by absolute immunity, but instead qualified immunity. I think what we've heard Mr. Gremion argue today is really a bright line temporal test. And that sort of temporal test has been rejected time and time again, both by the Supreme Court and this court. While it is true that the determination of probable cause can be suggestive of whether a person is acting in a prosecutorial or an investigative function, it is by no means the determining factor as Buckley noted in both footnotes five and footnotes six. There is the vision of law that you're articulating is one that I'm extraordinarily sympathetic to as an original matter. I think the problem you have, and that leads to my question to you is you do have a mountain of case law that sets up the structure of law that opposing counsel has set forth. How do you deal with cousins, for example, cousin? Your Honor, our interpretation of cousin is that it is distinct here because the behavior engaged in by the assistant district attorney and cousin is really one of plea bargaining. In essence, an offering of a deal to that witness in exchange for testimony. And that falls really squarely within a prosecutor's role in presenting testimony to the court. Whereas the- So is preparing a witness for trial. Yes, Your Honor. I get that the allegations here, which of course are denied, but we take as a given, the allegations are extreme. I get why you're here and the disturbing nature of this case. I worry that we're really just foreclosed by case law here. Well, Your Honor, I think the opinion by the Second Circuit and Simon is instructive on this question of when an interview is a prosecutorial interview to prepare a witness versus when that turns into an interrogation or the type of questioning that a police officer would engage in. And I believe the language that the Simon court used there was questioning a witness for a brief period before presentation to determine whether in prosecutor's judgment the witness's testimony should be pursued and contrasted that with the type of investigation that a police officer would conduct. And here we have a witness who is essentially detained against his will. I mean, we plead in the complaint that he was a child and didn't believe he had an opportunity to leave. So this is already putting us in kind of this investigative role that a prosecutor doesn't normally have the power to do to detain someone for an interrogation, to show them a photo array, to have them pick out a suspect and to show them evidence in this manner. So that's where we distinguish Cousin here is that this is a far more traditional police activity than it is one of a prosecutor who's preparing a witness to testify at trial. In your view, your best case is Simon? No, in our view, our best case is Buckley. And essentially for Cousin to be harmonized not only with Buckley, but with later cases from this circuit, including Singleton and Spex, we have to read Cousin narrowly for this sort of prosecutorial conduct that was involved, namely this plea bargaining activity. And there's also a more explicit language in Cousin of the declaration of that witness. Remind me, I may be ignorant on this, but I thought Buckley involved a situation that was prosecutorial conduct prior to the indictment and probable cause. It is indeed, your honor. This case obviously is not that. What is your best case for a court not doing absolute immunity, despite the fact that it is post-indictment interviewing a witness for trial? Well, I think that in this circuit, our best cases are Spex, which is an analogous situation where it's essentially post the filing of a complaint and a prosecutor engaging in that fabrication of evidence, even despite it being beyond what would have been equivalent to the probable cause determination. And there not being absolute immunity afforded to the prosecutor there. In Singleton as well, several of those witnesses, I believe in the opinion it notes that several of those witnesses who were detained was after the determination of probable cause in the underlying criminal matters there. And again, the prosecutor was not afforded absolute immunity in those instances either. And I was citing Buckley, I apologize, should have been not for the prospect that it was post probable cause. I just, I meant to cite it for the proposition that the court was clear that the termination of probable cause is not a hard line test there, but merely a suggestion of whether. Yeah, no, and you're certainly right. The court is careful not to specifically disavow a bright line. I get you there, but I'm looking, as I asked, looking for an example where the court actually declined, took away or refused to extend prosecutorial immunity. And it sounds like your focus is specs in Singleton. Yes, it's the most recent cases from the fifth circuit on that specific point. Yes, your honor. And other cases are recent. Remind me in Singleton, when was the alleged misconduct? As I understand it, it was, you know, use of fraudulent false information. I get that that's similar, but I thought it was earlier in the process. It was prior to trial, but post probable cause determination. I think the issue with Singleton was there's multiple witnesses who were served those fake subpoenas. And so some of them who were bringing their claims were prior to probable cause determinations. Others were after, but I believe the holding applies to all of those witnesses plaintiffs. So you're saying in Singleton it was after indictment? I believe so, unless I'm mistaken, your honor. My memory of Singleton was yet some of those witnesses were served with those fake subpoenas after charges have been filed. And I did want to address one other argument that I just feel we could have made more clear in our brief, which was, and which Mr. Grameon addressed earlier, which was this idea that it would be totally incongruous for a grant of absolute immunity only to District Attorney Paroleau and not to Detective Foster. Now, I want to be clear, we're not retreating in our position at all that neither should be granted absolute immunity here. But I step of the analysis, that of the underlying policies of 1983, we believe would foreclose any grant of absolute immunity to Detective Foster. And that's because it's not just a question of the function, but even after considering the function, one must ask whether this really protects the judicial process, which was the underlying policy of the grant of immunity itself, to protect the Office of Prosecutors from a chilling effect if they were to be sued for presentation of false testimony or other misconduct during the trial. That's simply not a consideration for a police officer who lacks the power to engage in any of those prosecutorial activities. Detective Foster is unable to go into the courtroom and present a witness's testimony or make other decisions on the presentation of a case. So I just wanted to make that point clear, which I think could have been clearer in our briefing. So I will begin to conclude unless there are further questions from the bench, but just by noting again that these are clearly investigative police-type activities in which both District Attorney Foster and, I'm sorry, District Attorney Perlew and Detective Foster engaged. We look particularly at the interrogation of a young child and the use of photo lineups demonstrating pieces of evidence to that child in a bid to fabricate a witness statement that would later be used against Mr. Weary. And so it's our belief that that is pretty squarely in police investigative activity and would be an unwarranted extension of the doctrine of absolute immunity were we to state otherwise. And we believe that is consistent with Cousin and Buckley and the line of more recent jurisprudence from this court itself. And with that, we would ask that you affirm the District Court's ruling denying absolute immunity to Detective Foster and District Attorney Perlew. And I just finally note that the procedural posture of this case is, again, on a 12C, and this does not foreclose entirely the defense of absolute immunity to these defendants, but merely at this stage where our facts are to be taken as true as pleaded, they would have an opportunity later, again, during summary judgment if we fail to reduce evidence in support of our claims or, again, at trial. And so I thank the panel for its attention today. Thank you, sir. Mr. Grinnell? Thank you, Your Honors. Thank you, Your Honors. Addressing that last point that this can be raised later, as I'm sure Your Honors are well aware of the mountains of case law out there that say immunity is essentially lost if not granted at the early stages of the proceeding. That's why it's raised now rather than at summary judgment. It's immunity from suit, not a defense to liability. Can you give us your take on the Singleton and Spex cases? Absolutely, Your Honor. Spex is easy. The allegation there was fabrication of evidence during the investigation. I mean, it's clear from the facts of the case that there was fabrication during the investigation. And just to be clear, you're saying it was before any indictment? I'm not positive if it was before an indictment, but the facts were very clear that they were conducting the investigation into the violation in the case because it was an alcohol tobacco case. They were conducting investigation into Spex, the vendor, when they fabricated the evidence. It was not when they were preparing to actually, because it wasn't a trial, when they were actually going to revoke their license or whatever the result would have been in that case. With respect to Singleton, counsel is correct. The case, I think, does make clear that at least to some of the witnesses, it was post-indictment. But it is a very different case, Your Honors. That is a case where there were forged and fabricated subpoenas sent out to witnesses, and I'll quote from this court, to gather information. The court then repeated that this information gathering scheme was not subject to absolute immunity. That's what the court hung its hat on. It said that the purpose of these fake subpoenas was to interview witnesses to obtain information to possibly use in a later prosecution. Yeah, it happened after. So is the dichotomy you're setting up that if the law enforcement officials, if the public officials, I'll say, whether they're police officers or prosecutors, if they're genuinely trying to figure out what the truth is, then that's one thing. That's outside of absolute immunity because it's investigative. But if they basically decided we're going to trial, we're prosecuting X person, and we just want to maximize our case, that's when absolute immunity attaches. I think that's pretty close, Your Honor, except that I wouldn't necessarily use the word genuinely trying to find the truth because we know in these cases that there's some misconduct alleged. Somebody's done something wrong. But I think if it's an information gathering, and again, this court described it in Cousins as searching for clues and corroboration that would support a finding of probable cause, then it's investigative. But if it's evaluating evidence and interviewing witnesses in preparation for trial, then it's advocatory. When you read Singleton, it's very clear that he's- The reason I asked about the dichotomy, if that's the law, so be it. But it does create this sort of perverse dynamic that once the officials have trained their eyes on somebody, that's when we would be most on guard for mischief. And yet that's when we're supposed to, at least under our precedence, apply absolute immunity. I get it, Your Honor. It's- Maybe Justice Scalia was right, I guess is what I'm trying to say. I don't think anybody's saying that it's a perfect system, but that's one of the reasons that we look, and this court said a significant factor is that indictment date, right? And particularly here, we're not looking at right after the indictment where we're trying to drum up some stuff to maybe make sure this can get to trial. We're talking about two or three months prior to trial. The suggestion by counsel that there is no authority to support fabrication of evidence being granted absolute immunity is simply not true. Your Honor, call it a mountain of case law. There is a mountain of case law, Cousins being the most important one because it's from this circuit. But when you look at others like Beckett from the Sixth Circuit, they find the same way. And in closing, Your Honor, I want to address this issue about Mr. Foster. To not grant Mr. Foster immunity when it so clearly is applicable to the prosecutor from Cousins literally disregards decades of case law from this court and from the Supreme Court. Every single case that addresses this issue says this is functional, this is not by title, and to say he's not entitled to it because he's an officer means that we look at the title, and that's what the cases say. We cannot do that. We can look at O'Neill's side in our brief where they gave the immunity to the Mississippi Board of Nursing, the director of the Mississippi Board of Nursing, non-prosecutors getting the immunity. And I'll close, Your Honors, with a quote from the Buckley case when they were examining this. They said specifically when the functions of prosecutors and detectives are the same as they were here, the immunity that protects them is the same. The immunity that protects these two defendants is the same. Thank you, Your Honors. Thank you, sir. Thank you, counsel, for the arguments.